IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DEAN BROWN, SUE BROWN, on behalf of themselves, and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) NO.  7:05-cv-1048-JEO<br>) |
| FIRST FRANKLIN FINANCIAL,<br>FIRST TRUST MORTGAGE, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter is before the court on the motion of Defendant First Trust Mortgage Corporation of America ("First Trust") to stay these proceedings and to compel the plaintiffs to arbitration.  (Doc. 7).  The motion is opposed by the plaintiffs.  (Doc. 8).  Defendant First Franklin Financial ("First Franklin") does not oppose the motion, but asserts that it is not a party to the arbitration agreement at issue.  (Doc. 10).  For the reasons set forth herein, the undersigned finds that the motion to compel arbitration and to stay the present proceedings is due to be granted.

**BACKGROUND**

The plaintiffs filed this action on May 19, 2005, alleging that the defendants violated the Truth in Lending Act ("TILA").  (Doc. 1).  Specifically, they assert that the defendants failed to provide them with a required booklet relating to variable interest rate loans, that they impermissibly advertised their rates, and that they provided the plaintiffs with contradictory terms to confuse them.  (*Id*.).  As best this court can discern at this juncture, the plaintiffs assert that they entered into a mortgage loan with First Franklin that was brokered by First Trust.  They

also seek class certification of this action.

First Trust filed its motion to compel arbitration and stay these proceedings premised on the assertion that the plaintiffs executed an arbitration agreement during the loan closing that requires the plaintiffs to arbitrate disputes such as the present one. (Doc. 7). The plaintiffs retort that (1) their disputes are not covered by a written arbitration agreement, (2) there is no binding arbitration agreement between the parties to this action because the contract or contracts are ambiguous, there was no consideration for the agreement, and the agreement was induced by fraud, and (3) the anti-class provisions in the agreement are due to be struck because "modern Alabama law clearly disfavors such provisions as unconscionable and unenforceable." (Doc. 8).

In support of their arguments, the plaintiffs assert that there are discrepancies in the terms between the loan application documents executed on August 20, 2004, and the loan closing documents executed on October 1, 2004. They assert as follows:

> The arbitration document referenced in the Motion was provided to the Plaintiffs by Defendant First Trust on or about August 20, 2004 as a part of a loan application package that contained two conflicting Truth in Lending Statements, one claiming that the loan had a 4.290% Annual Percentage Rate ("APR") and another claiming that the loan had a 5.304% APR.[ ] . . . . Yet, the final agreement executed on or about October 1, 2004, provided for two mortgages, one financed at a 9.166% APR and the other at a 6.277% APR. . . .
>
> Therefore, critical terms of the final agreement relating to the cost of borrowing were absent from the documents provided to the Plaintiffs by Defendant First Trust on August 20, 2004. That significant omission precluded any legally binding agreement from being made on the aforementioned August day.
>
> Further, if Defendant First Trust is charging the Plaintiffs an interest rate that is proper and non-fraudulent, there was no offer or acceptance on the aforementioned August day, as the Plaintiffs are currently paying Defendant First Trust interest charges . . . that do not appear on the documents that accompanied the arbitration clause. At best, the arbitration document accompanied preliminary

>   discussions between the parties. At worst, the document was included with a series of false claims as to what interest rates the Plaintiffs would be charged.
>
>   Beyond the aforementioned discrepancies between interest rates, the above described documents differ in other respects: the loan numbers do not match, nor do the amounts financed, nor do the finance charges. Further, the papers accompanying the arbitration document indicate that there is not prepayment penalty on the loan, while the final mortgage provides for such a penalty. . . .

(Doc. 8 at ¶¶ 6-9) (footnote omitted).

## THE FAA

The Federal Arbitration Act ("FAA") establishes a "federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). *See also Green Tree Financial Corp. of Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000) (noting the "liberal federal policy favoring arbitration agreements"). It provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon some grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA effectively admonishes the federal courts to "vigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). Questions of arbitrability must be addressed with regard to the federal policy favoring arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a defense to arbitrability." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25.

Although the FAA does not create independent federal question jurisdiction, *id*. at 25 n.32, it does create a body of federal substantive law which establishes and regulates the duty to

honor an agreement to arbitrate.  The FAA explicitly requires that the arbitration provision be written and that it evidence a "transaction involving commerce."  9 U.S.C. § 2.  Section 3 of the Act provides for a stay of federal proceedings when an issue in the matter is referable to arbitration.  9 U.S.C. § 3.  Section 4 provides the court with the authority to issue orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  9 U.S.C. § 4.  Further, state law that conflicts with the FAA is preempted under the Federal Constitution's supremacy clause.  U.S. Const. Art. VI, cl. 2; *Perry v. Thomas*, 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).

## DISCUSSION

### Coverage of the Agreement

The plaintiffs initially assert that the present dispute is not covered by the arbitration agreement.  The court disagrees.  The "Arbitration Agreement" executed by the plaintiffs provides, in pertinent part:

> CLAIMS AND DISPUTES COVERED: This agreement applies to all claims and disputes between your and us of any description whatsoever.  This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:
>
> • the loan you obtained and our services and fees in connection with that loan;
>
> • any previous loans you obtained, and our services and fees in connection with those loans;
>
> • all documents, actions or omissions relating to this or any previous loan;
>
> • any insurance products, service or contract, or warranty purchased in connection with this or any previous loan;
>
> • whether the claim or dispute must be arbitrated;

> - the validity of the arbitration agreement, your understanding of it, or any defenses as to the enforceability of this Agreement;
>
> - any negotiations between you and us;
>
> - any claim or dispute based on an allegation of fraud or misrepresentation;
>
> - any claim or dispute based on or arising under any federal or state statute;
>
> - any claim or dispute based on a contract or alleged tort; and,
>
> - any claim for injunctive or equitable relief.
>
>    This agreement also applies to any claim of [sic] dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our officers or directors, any of our affiliate corporations, and any of their employees or agents.

(Doc. 7, Ex. A). It is signed by the plaintiffs and clearly includes the claims asserted in this litigation. Additionally, the affidavit of Brandon Free demonstrates that First Trust is a "mortgage broker that routinely brokers deals between borrowers and out-of-state lending institutions." (Doc. 7, Ex. B at ¶ 3). Free further states that First Trust dealt with out-of-state lending institutions in connection with the loan ultimately obtained by the plaintiffs in this matter. (*Id*. at ¶ 4). Accordingly, the plaintiffs' first challenge is insufficient.[1]

### Lack of a Binding Agreement

The plaintiffs next assert that there is no binding agreement between the parties because the terms are ambiguous, there was no consideration for the agreement, and the agreement was induced by fraud. Binding federal law is clear, in adjudicating motions to compel arbitration and stay the pending proceeding, "a federal court may consider only issues relating to the making and

---

[1] To the extent the plaintiffs assert this court should determine arbitrability issues, the court further notes the pertinent agreement cited above and agreed to by the parties clearly states that such matters are to be decided by the arbitrator. (Doc. 7, Ex. A).

performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). As noted by United States District Judge Myron Thompson in *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1108-09 (M.D. Ala. 2004):

> . . . . Issues to be decided by the court "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53, 123 S. Ct. 2402, 2407, 156 L. Ed. 2d 414 (2003).
>
> As a general rule, when considering these "gateway issues," the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967); *John B. Goodman Limited Partnership v. THF Construction, Inc.*, 321 F.3d 1094, 1095-96 (11th Cir. 2003) (per curiam). "*Prima Paint's* mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator." *Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1431 (M.D. Ala. 1998) (Thompson, C.J.).
>
> There is an exception to the *Prima Paint* rule, however, for "cases where not merely the enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause, is legitimately called into question, and must be decided by the court." *Rainbow Investments, Inc. v. Super 8 Motels, Inc.*, 973 F. Supp. 1387, 1390 (M.D. Ala. 1997) (Thompson, C.J.). Cases in which there is no signed contract and in which one party denies the existence of an agreement fall into this category. The Eleventh Circuit has explained:
>
>> "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.

> "The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language."

*Chastain v. The Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir.1992) (citations and footnotes omitted).

Again, premised on binding authority, the plaintiff's challenges regarding ambiguities, consideration, and fraud as to the terms of the contract are matters for arbitration. They do not relate specifically to the making, validity, and performance of the arbitration agreement. Thus, they are not appropriate for review by this court at this time. They are not sufficient to overcome First Trust's motion to compel arbitration.

### Anti-class Provision

Finally, the plaintiffs assert that the anti-class provision in the arbitration agreement is unconscionable and should be stricken. In support of this argument, they cite *Leonard v. Terminix International Co.*, 854 So. 2d 529 (Ala. 2002). The defendant disagrees and relies on *Taylor v. First North American National Bank*, 325 F. Supp. 2d 1304 (M.D. Ala. 2004).

The agreement in the present case provides that "[t]he arbitrator will not be allowed to conduct arbitration on a class-wide basis." (Doc. 7, Ex. A at p. 2). In *Leonard*, the plaintiffs brought an action against Terminix after it failed to conduct an annual inspection required by

state law. Terminix moved to compel arbitration pursuant to their agreement. After the trial court granted the motion to compel, the Alabama Supreme Court reversed, holding that the agreement was unconscionable. As noted by Judge Thompson in *Taylor*,

> The agreement between the Leonards and Terminix contained two relevant provisions. First, it contained an arbitration clause that provided that "any controversy or claim . . . shall be settled exclusively by arbitration . . . [,] conducted in accordance with the Commercial Arbitration rules then in force of the American Arbitration Association." 854 So. 2d at 531. Second, the agreement, both in the arbitration provision and in a separate clause, provided that the plaintiff could not recover "special, incidental, or consequential damages." *Id.* at 531-32.
>
> On appeal, the plaintiffs argued that the arbitration clause was unconscionable because the costs of litigating their individual claim before the arbitrator would be more than the amount in controversy and because the arbitration provision prevented them from bringing an economically feasible class action.[ ] The plaintiffs' suit was for less than $500, and they claimed that under the rules provided for in their arbitration agreement they would be responsible for: "(1) a $500 arbitration filing fee; (2) a minimum $150 administrative fee per party; (3) an administrative fee of $150-$250 per day per party for each hearing date; (4) one-half of the average arbitrator's fee of $700 per day; (5) one-half the cost of the charge for a meeting room; and (6) the cost of an attorney." 854 So. 2d at 535.
>
> The court held that the arbitration agreement was unconscionable and unenforceable because of "[t]he limitation upon recovery of 'indirect, special, and consequential damages or loss of anticipated profits' in the arbitration clause and elsewhere in the agreement" and because of "the preclusion of eligibility for class-action treatment by inserting a provision requiring arbitration." *Id.* The court held that these two provisions "deprive[d] the Leonards of a meaningful remedy" and concluded that "Terminix has extracted unreasonably favorable and patently unfair terms in its contract of adhesion." *Id.*
>
> The court also noted that the contract between the Leonards and Terminix was a "contract of adhesion," that the Leonards "were not given any opportunity to accept or reject the arbitration provision," that they were not "given any quid pro quo for agreeing to arbitration," and that the "Leonards are not sophisticated or wealthy consumers with equal bargaining power." 854 So. 2d at 538. The court also noted that upon buying their house, "[t]he Leonards' choice was to accept the transfer of the [sellers'] contractual relationship with Terminix (with no

>added cost) or obtain the termite bond from another termite control company, which would have required payment of substantial added costs of at least $1,000 for a new termite treatment by that company." *Id.*

*Taylor*, 325 F. Supp. 2d at 1320.

In *Taylor*, the plaintiff brought an action against her credit card holder alleging TILA violations. The defendant moved to stay the proceedings and compel arbitration. She in turn filed a motion for a jury trial on the issue of whether an agreement to arbitrate exists between her and the bank. In pertinent part she asserted that the agreement effectively precluded her from bringing an action to enforce her rights. Specifically, she asserted that "the costs of bringing [her] individual claim in arbitration are greater than the amount she is likely to recover, and she cannot afford the costs of bringing a class action in arbitration." *Id.*, 325 F. Supp. 2d at 1319. Rejecting her claim, Judge Thompson stated that although Taylor's case had some similarities to the *Leonard* decision, it was distinguishable in significant ways. Specifically, he noted that "unlike in *Leonard*, the arbitration agreement between Taylor and First North American does not limit Taylor's right to recover damages,"[2] the fees were lower than those facing the plaintiffs in *Leonard*,[3] and, "if Taylor is successful in her individual claim, she will recover her costs and her

---

[2]He stated:

>The arbitration clause provides that arbitration will proceed according to the rules of procedure of NAF, and those rules provide that Taylor can recover any damages available under the applicable substantive law. NAF Rule of Procedure 20.C ("An Arbitrator shall follow the applicable substantive law and may grant any remedy or relief provided by law in deciding a Claim."). Thus, Taylor can recover the damages provided for under TILA. 15 U.S.C.A. § 1640(a)(1)-(2). It is likely that the amount Taylor will recover if she prevails on her individual claim will be modest; however, her recovery will be no less than what she would recover absent the arbitration provision.

*Taylor*, 325 F. Supp. 2d at 1321.

[3]He stated:

>Indeed, Justice Ginsgurg has cited NAF as an example of a forum providing for "fair cost and fee allocation." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 95 n. 2, 121 S .Ct. 513, 524 n. 2, 148 L. Ed. 2d 373 (2000) (concurring in part and dissenting in part). In this case, Taylor would be responsible for a $25

attorneys fees." *Id*. at 1321 ("TILA provides that 'in the case of any successful action to enforce . . . liability,' the plaintiff shall recover 'the costs of the action, together with a reasonable attorney's fee,' 15 U.S.C.A. § 1640(a)(3), and NAF's rules of procedure provide that '[a]n Award may include fees and costs awarded by an Arbitrator . . . as permitted by law,' NAF Rule of Procedure 37.C."). Premised on these differences, Judge Thompson concluded "that the terms of the arbitration agreement between Taylor and First North American were not 'grossly favorable' to the bank" so as to justify a finding that the contract was unconscionable in its limitations on class actions.[4] *Id*. at 1321-22.

Upon consideration of the foregoing authorities, this court finds the plaintiffs' situation to be more akin to the facts in *Taylor* and accordingly finds that the motion of First Trust is due to be granted. First, the present situation is similar in that the plaintiffs right to recover damages under TILA is not limited. To the contrary, the agreement provides that any award shall be consistent with governing law. Second, the arbitration fees will be similarly governed by the NAF Rules of Procedure. Third, if successful, the plaintiffs may recover their costs and attorneys

---

filing fee, and First North American would be responsible for the $25 commencement fee and the $200 administrative fee.[ ] If Taylor requests a participatory hearing, she would pay half the $150 participatory hearing session fee.[ ] These are only the basic fees; they do not include the arbitrator's fees or additional costs (for written findings of fact, for example). Overall, however, the costs provided for by NAF are lower than those facing the Leonards.

*Taylor*, 325 F. Supp. 2d at 1321 (footnotes omitted).

[4]Judge Thompson also found that the plaintiff "failed to show that First North American had 'overwhelming bargaining power'" under *American Gen'l Fin. Inc. v. Branch*, 793 So. 2d 738, 748 (Ala. 2000), to warrant relief. He stated,

It is undoubtedly true that First North American has greater resources than does Taylor and that the bank would be unlikely to bend to Taylor's demands in negotiation. However, in discussing the "overwhelming bargaining power" element of its test for unconscionability, the Alabama Supreme Court framed the inquiry as "whether the consumer has the ability to obtain the product made the basis of the action without signing an arbitration clause." *Id.* at 750 (internal quotation omitted). The court would not be surprised if most credit card agreements were subject to arbitration provisions, but Taylor has made no showing on this issue.

*Taylor*, 325 F. Supp. 2d at 1322.

fees.

## CONCLUSION

For these reasons stated above, the court finds that the motion to compel arbitration and for a stay of these proceedings (doc. 7) is due to be granted.  However, as First Franklin is not a party to the agreement, it is specifically excluded from the court's order compelling arbitration.  The present matter is stayed as to all parties during the pendency of the arbitration.

**DONE,** this the 18th day of November, 2005.

_____
**JOHN E. OTT**
United States Magistrate Judge